IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HEATHER WILLIAMS, | ) | Case No. 3:18-cv-1706 |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

**I.      Introduction**

Plaintiff, Heather Williams, seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. Because Williams waived her Appointment Clause challenge and because substantial evidence supports the ALJ's decision, I recommend that the final decision of the Commissioner be AFFIRMED.

**II.      Procedural History**

Heather Williams protectively applied for DIB and SSI on December 8, 2014. (Tr. 190, 197). She alleged a disability onset date of December 20, 2013. (Tr. 190, 197). Her applications were denied initially on March 4, 2015 (Tr. 123, 127) and on reconsideration on July 29, 2015. (Tr. 132, 135). Williams requested a hearing, and Administrative Law Judge ("ALJ") Jeannine Lesperance heard the case on June 22, 2017. (Tr. 35-62). On November 22,

2017, the ALJ issued a decision finding that Williams was not disabled. (Tr. 16-27). On May 25, 2018, the Appeals Council denied Williams' request for further review, rendering the ALJ's conclusion the final decision of the Commissioner. (Tr. 1-3). On July 23, 2018, Williams filed this action to challenge the Commissioner's denial of her claim. ECF Doc. 1.

**III.    Evidence**

    **A.    Relevant Medical Evidence**

        **1.    Physical Limitations**

Heather Williams was born on November 17, 1978 and was 35 years old on the alleged onset date.[1] (Tr. 190). She previously worked as an assembler at Whirlpool. (Tr. 46-47).

On November 19, 2013, Williams went to Orthopedic One complaining of left knee swelling, pain, weakness and stiffness. (Tr. 277). She reported a long history of left knee problems including an ACL reconstruction when she was 17 years old, a repeat ACL reconstruction and second surgery for meniscal pathology in the mid-2000s, and arthroscopic surgery with meniscal debridement in 2009. (Tr. 278). An MRI showed medial compartment degenerative disease, degenerative meniscal tearing, and laxity of her cruciate ligaments. (Tr.278).

Williams had another surgery on January 15, 2014 that included a medial meniscectomy and partial chondroplasty. Her surgeon diagnosed internal derangement of the left knee with osteoarthritis and grade four chondromalacia of the medial femoral condyle; partial tearing of the medial meniscus; grade three chondromalacia of the trochlear groove; grade two chondromalacia of the patella; and a lateral tibia fissure. (Tr. 288).

---

[1] The transcript is filed as ECF Doc. 17.

2

At a doctor's appointment on April 24, 2014, Williams stated that she was going to try to return to work but would "medically retire" if her knee could not take it. She also reported that she was very busy and was taking care of six children. (Tr. 305). On May 27, 2014, she told her doctor that she had quit her job and was having a hard time being active. However, she also stated that she was taking care of seven children. (Tr. 309). On September 29, 2014, she told her doctor that she was trying to find a job because she got very bored during the day. She continued to complain of left knee pain. (Tr. 315).

On January 15, 2015, Williams met with Jason Reed, D.O., for another opinion regarding her knee pain. He ordered gel injections for her knees. (Tr. 456). Williams reported that the injection did not improve her pain. (Tr. 454). Dr. Reed ordered an MRI of her left knee. The MRI showed a medial meniscus tear, primary osteoarthritis and an osteochondral defect of the lateral femoral condyle. Dr. Reed discussed surgical options and Williams wanted to proceed with surgery. (Tr. 453). She underwent arthroscopic surgery on November 18, 2015. (Tr. 459).

Williams followed-up with Dr. Reed's office on February 24, 2016. She reported that her surgery went well and everything was great for the first month. However, she complained that she was still having constant pain and swelling. She had not gone to physical therapy and was sedentary and unemployed. (Tr. 493)

Williams underwent a total knee replacement on December 14, 2016. (Tr. 513). Following the surgery, she went to physical therapy and did home exercises. She was released to return to work on February 13, 2017. (Tr. 512).

### 2. Mental Limitations

Dr. Bipin Desai, M.D. has been treating Williams for mental impairments since June 2000. (Tr. 327). On November 24, 2014, she reported feeling depressed and anxious. She

3

reported having lost weight and not sleeping well. Her mother was in hospice. Williams planned to file for disability benefits. (Tr. 355). On December 29, 2014, Williams said she had broken "some stuff" yesterday because she felt frustrated. She reported vegetative symptoms of depression and told Dr. Desai that she had applied for disability. (Tr. 357). Dr. Desai referred her to a therapist and noted that she was "off duty" until June 30, 2015. (Tr. 358).

On June 10, 2015, Williams reported that she was feeling better. Dr. Desai observed that her mood and affect had improved. (Tr. 474). However, at her next appointment on September 2, 2015, she seemed worse. She reported being depressed and having vegetative symptoms again. (Tr. 476). On February 2, 2016, she reported feeling depressed; having vegetative symptoms; and not sleeping well. (Tr. 480). On June 7, 2016, Williams reported feeling "pretty good" except for difficulties with anxiety. She had taken a job at Burger King. (Tr. 482).

**B.     Opinion Evidence – Treating Physician Dr. Desai – December 2014**

On December 30, 2014, Dr. Bipin Desai completed a questionnaire indicating he had treated Williams since June 4, 2000. He listed her diagnoses as major depression and panic disorder. He noted that she was compliant with treatment, but that her response to therapy had been poor. (Tr. 327-328).

Dr. Desai completed another questionnaire on June 27, 2016. (Tr. 484-486). He reported that Williams was "feeling pretty good except for difficulty with anxiety." He reported that her response to treatment had been fair and that her prognosis was guarded. (Tr. 484). He opined that she suffered from moderate impairments in performing short and simple instructions, working with others, interacting appropriately with the general public, accepting supervision, and getting along with co-workers. He opined that she suffered marked impairments in the ability to

4

understand, remember and carry out detailed instructions, and in the ability to maintain attention and concentration. (Tr. 485).

### C. State Agency Reviewing Physicians

On February 26, 2015, Michael Delphia, M.D. reviewed Williams' records and determined that she was capable of work at the light exertional level with some additional postural limitations. (Tr. 86). On July 27, 2015, Leslie Green, M.D. affirmed Dr. Delphia's opinions. (Tr. 116).

On February 28, 2015, Deryck Richardson, Ph.D. reviewed Williams' records and found that she was capable of simple to moderately complex tasks in a setting without strict deadlines or quotas. (Tr. 88). On June 22, 2015, Patricia Kirwin, Ph.D. reviewed Williams' records and affirmed Dr. Richardson's opinions. (Tr. 118).

### D. Relevant Testimonial Evidence

#### 1. Williams' Testimony

Williams was 38 years old when the hearing took place on June 22, 2017. (Tr. 41). She lived in a house with her father, two of her daughters and her grandchild. (Tr. 41). She had her driver's license and drove every day. She had obtained her GED. (Tr. 42).

Williams was working full time at Whirlpool through a temporary agency. She was doing assembly type work that she had performed previously at the same job. (Tr. 43). Williams was working again but was having a lot of pain and swelling in her knee. She stood most of the day at the job on an assembly line. (Tr. 46-47). She also previously worked part-time at Burger King. (Tr. 44).

Williams suffered from depression. For a period of two years, in 2014 and 2015, she was having more severe symptoms and Dr. Desai had her off work. (Tr. 50).

Williams was taking care of her father.  She was paying his bills for him and doing all the chores and grocery shopping.  (Tr. 51).  She also babysat her grandchild.  She could not attend her daughter's choir performances because she would have panic attacks around a lot of people.  (Tr. 52).

Williams estimated that she could sit for 45 minutes before she needed to stand up and move her knee.  She would need to move around for at least an hour before sitting again.  (Tr. 53).  Williams had missed one day of work since returning to Whirlpool a month ago.  She had a hard time concentrating and remembering.  (Tr. 54).

### 2. Testimony of Richard B. Oestreich, Vocational Expert

Vocational Expert ("VE") Richard Oestreich also testified at the hearing.  (Tr. 56-60).  Williams' past work was as an unskilled assembler performed at the light exertional level.  (Tr. 57).  The VE was asked to consider an individual who could stand and/or walk for four hours in an eight-hour workday; could occasionally climb ramps and stairs, kneel, crouch, or work in atmospheric conditions; could never push, pull, or operate foot controls with the left lower extremity; could not climb ladders, ropes, or scaffolds; and could not crawl.  The individual could perform simple to moderately complex tasks at an average pace but could not perform jobs that had strict time or production demands; could frequently interact with others, but only superficially, with no complaints, negotiation, persuasion or supervising others; and she could adapt to occasional changes in work duties.  (Tr. 57-58).

The VE opined that, even though Williams was performing her past work, the hypothetical individual could probably not perform her past work.  The VE opined that with the limitations included in the hypothetical question only about forty percent of light work positions would be available.  (Tr. 58).  He opined that the hypothetical individual would still be able to

perform the jobs of packager, inspector and garment sorter. (Tr. 58.) The hypothetical individual would still be able to perform those jobs if she needed to alternate between sitting and standing every hour, and if she were limited to no interaction with the general public and only occasional interaction with supervisors or co-workers. (Tr. 59-60). There were a significant number of these jobs in the national economy. (Tr. 56). The VE testified that an individual who was off task 15% of the time and/or who missed two days of work per month would not be able to work. (Tr. 59).

The VE stated that his testimony was consistent with the *Dictionary of Occupational Titles* (DOT). He also testified that to the extent the ALJ had asked him about anything not addressed in the DOT, his testimony was based on his experience and education. (Tr. 59).

### IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

6. Williams was unable to perform any past work.

10. Considering her age, education, work experience, and residual functional capacity, there were jobs existing in significant numbers in the national economy that Williams could perform. (Tr. 24).

Based on all her findings, the ALJ determined that Williams was not under a disability from December 20, 2013, the alleged onset date, through the date of her decision. (Tr. 25).

### V. Law & Analysis

#### A. Standard of Review

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "more than a scintilla

7

of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs*., 25 F.3d 284, 286 (6th Cir. 1994).

The Act provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §§ 405(g) and 42 U.S.C. 1383(c)(3). The findings of the Commissioner may not be reversed just because the record contains substantial evidence to support a different conclusion. *Buxton v. Halter,* 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen,* 800 F.2d 535,545 (6th Cir. 1986); see also *Her v. Comm'r of Soc. Sec*., 203 F.3d 288, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." See *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without risking being second-guessed by a court. *Mullen,* 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984).

The court also must determine whether the ALJ decided the case using the correct legal standards. If not, reversal is required unless the legal error was harmless. *See e.g. White v. Comm'r of Soc. Sec*. 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [when] the reasons given by the trier of fact do not

build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996); accord *Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue,* No. 1:09-cv-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010). Requiring an accurate and logical bridge ensures that a claimant will understand the ALJ's reasoning.

In considering a Social Security benefits application, the Social Security Administration must follow a five step sequential analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether the claimant can still perform her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform her past relevant work, the burden shifts to the agency to produce evidence that the claimant can perform a significant number of other jobs that exist in the national economy. *See Combs v. Comm'r of Soc. Sec.,* 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920. A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. §404.1512(a).

### B. Appointments Clause Challenge

Williams contends that this case must be remanded because the ALJ who heard her case was not properly appointed. In *Lucia v. S.E.C.,* __ U.S. __, 138 S. Ct. 2044, 201 LEd2d 464 (2018), the U.S. Supreme Court considered an Appointments Clause challenge to the authority of an ALJ appointed by staff members of the Securities and Exchange Commission ("S.E.C."). The Court held that S.E.C. ALJs were "Officers of the United States" within the meaning of the Appointment Clause, and therefore must be appointed as that Clause prescribes – by the President, a Court of Law, or the Head of the Department. *Id.* at 2050, 2054. Thus, S.E.C. ALJs could be appointed by the Commission as the head of the department, but not by S.E.C. staff members. *Id.* at 2055. Relevant here, the majority in *Lucia* noted that relief was available only to a party "who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case." *Id.*

Following *Lucia,* litigants began challenging the authority of Social Security ALJs pursuant to the Appointment Clause in federal district courts. *See Hodges v. Comm'r of Soc. Sec.,* No. 1:18-cv-394, 2019 U.S. Dist. LEXIS 48775, at *4 (S.D. Ohio March 25, 2019). This court benefits from other courts having already considered the various arguments related to this constitutional challenge. The vast majority of these challenges have been unsuccessful because the litigants failed to raise the issue at the administrative level. *See, e.g., Fortin v. Comm'r of Soc. Sec.,* No. 18-10187*,* 2019 U.S. Dist. LEXIS 53920 (E.D. Mich. March 29, 2019); citing *Page v. Comm'r of Soc. Sec.*, 344 F. Supp.3d 902, 904 (E.D. Mich. Oct. 31, 2018) (Whalen, M.J.) (denying leave to file amended complaint and noting that "[a]s in *Jones Brothers*, the current challenge pertains to the Defendant's appointment duties under the applicable statutes as applied."); *Hutchins v. Berryhill*, No. 18-10182, 2019 U.S. Dist. LEXIS 50180, at *3 (E.D.

10

Mich. Mar. 26, 2019) ("Because Plaintiff here failed to raise his argument at any point in his administrative proceedings, the court will not entertain the argument at this time."); *Axley v. Comm'r of Soc. Sec.*, No. 18-1106, 2019 U.S. Dist. LEXIS 19715, at *2 (W.D. Tenn. Feb. 7, 2019) ("Plaintiff's failure to assert a challenge to the ALJ's appointment at any point in the administrative proceedings forfeited his Appointments Clause claim."); *Gothard v. Comm'r of Soc. Sec.,* No. 17-13638, 2019 U.S. Dist. LEXIS 15364, 2019 WL 396785, at *3 (E.D. Mich. Jan. 31, 2019) (Ludington, J.) (declining to address whether Plaintiff "waived her [A]ppointments [C]lause challenge by failing to raise it before the ALJ . . . because Plaintiff's argument concerning the applicability of *Lucia* has no merit."); *Dierker v. Berryhill*, No. 18-145, 2019 U.S. Dist. LEXIS 8646, at *4 (S.D. Cal. Jan. 16, 2019) ("Plaintiff raised his challenge for the first time in his October 4, 2018 letter brief. . . . Plaintiff's failure to timely raise his Appointments Clause challenge forfeits the claim as untimely."), adopted by *Dierker v. Berryhill*, No. 18-145, 2019 U.S. Dist. LEXIS 18548, (S.D. Cal. Feb. 5, 2019); *Nickum v. Berryhill*, No. 17-2011, 2018 U.S. Dist. LEXIS 206835, at *6 (D. Kan. Dec. 7, 2018) ("Unlike the case in *Lucia*, plaintiff in the case before the court never raised the Appointments Clause issue before the agency."); *Blocker v. Colvin*, No. 2:14-02602, 2018 U.S. Dist. LEXIS 205857, *6 (W.D. Tenn. Dec. 6, 2018) ("Here, whether the ALJ had the constitutional authority to adjudicate Plaintiff's dispute would be an as-applied challenge . . . . Because Plaintiff failed to assert the challenge at the administrative level, the Court finds that the challenge is forfeited."); *Willis v. Comm'r of Soc. Sec.*, No. 18-158, 2018 U.S. Dist. LEXIS 206307, at *3 (S.D. Ohio Dec. 6, 2018) ("Plaintiff did not raise the Appointments Clause issue before the ALJ or the Appeals Council; therefore, the undersigned finds that she has forfeited this argument."); *Faulkner v. Comm'r of Soc. Sec.*, No. 17-01197, 2018 U.S. Dist. LEXIS 196840, at *3 (W.D. Tenn. Nov. 19,

11

2018) ("Plaintiff's failure to raise his Appointments Clause challenge at any point in the administrative process or show good cause why he did not do so forfeits his claim."); *Flack v. Comm'r of Soc. Sec.*, No. 18-501, 2018 U.S. Dist. LEXIS 195834, at *4 (S.D. Ohio Nov. 16, 2018) ("In light of the Supreme Court's decision in *Lucia* and subsequent courts' analyses of the issue, the Court finds that, even considering the directive of the emergency message, Plaintiff has forfeited her Appointment Clause claim."); *Davidson v. Comm'r of Soc. Sec.*, No. 16-00102, 2018 U.S. Dist. LEXIS 168054, at *2 (M.D. Tenn. Sept. 28, 2018) ("Because Plaintiff did not raise her as applied constitutional challenge at the administrative level or argue that she had good cause for her failure to do so, Plaintiff has waived her challenge to the appointment of her Administrative Law Judge.").

Williams concedes that she did not raise her Appointments Clause challenge at the administrative level. She asks the court to overlook this failure, citing *Sims v. Apfel,* 530 U.S. 103, 112, 120 S. Ct. 2080, 147 L.Ed.2d 80 (2000). Other courts in this district have already considered and rejected this argument because *Sims* held only that a claimant need not exhaust issues at the Appeals Council level prior to judicial review. "*Sims* did not address the wholly separate and distinct issue of whether a claimant must raise issues before an ALJ during the administrative process in order to preserve the right to raise those issues in a judicial appeal." *Hodges,* 2019 U.S. Dist. LEXIS 48775, at *6.

Williams also argues that courts have waived the exhaustion requirement if it would have been futile for the claimant to attempt to exhaust the claim. *Bethesda Hosp. Ass'n v. Bowen,* 485 U.S. 399, 404, 108 S.Ct. 1255, 99 L.Ed.2d 460 (1988); *Moore v. City of East Cleveland,* 431 U.S. 494, 524, 97 S. Ct. 1932, 52 L.Ed.2d 531 (1977). Williams contends it would have been futile for her to raise this issue before the ALJ because, while her claim was pending before the

12

Appeals Council, the Commissioner's Office of General Council issued an emergency message to its ALJs that, if a claimant raised the Appointment Clause challenge, the ALJs were to include the following language in their written decision:

> The claimant[/representative] also raised a challenge to the manner in which I was appointed as an administrative law judge under the Appointments Clause to the Constitution. I do not have the authority to rule on that challenge and do not address it further in this decision[/dismissal].

Soc. Sec. Admin., EM-180003. ALJs were instructed that they should "not otherwise discuss or make any findings related to the Appointments Clause issue." Williams acknowledges that the Commissioner's newest emergency message to ALJs provides claimants with a meaningful option for review of this issue. However, she maintains that it would have been futile for her to raise it because, at the time, ALJs were operating under the prior emergency message. ECF Doc. 18 at 15.

This argument has also already been considered by district courts in the Sixth Circuit. *See e.g. Flack v. Comm'r of Soc. Sec.*, No. 18-501, 2018 U.S. Dist. LEXIS 195834, at *4 (S.D. Ohio Nov. 16, 2018). In *Fortin v. Comm'r of Soc. Sec.,* 2019 U.S. Dist. LEXIS 53920 at *17-18, (E.D. Mich. March 29, 2019), the court determined that, even if it were futile, the claimant was required to raise the issue at the administrative level. The court applied the Supreme Court's reasoning in *United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 37, 73 S. Ct. 67, 97 L. Ed. 54 (1952) as follows:

> It is urged in this case that the Commission had a predetermined policy on this subject which would have required it to overrule the objection if made. While this may well be true, the Commission is obliged to deal with a large number of like cases. Repetition of the objection in them might lead to a change of policy, or, if it did not, the Commission would at least be put on notice of the accumulating risk of wholesale reversals being incurred by its persistence. Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over

13

> administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.

*Id.,* (footnote omitted.) The court also noted that in *Jones Brothers, Incorporated v. Secretary of Labor,* 898 F.3d 669 (6th Cir. 2018), decided shortly after *Lucia*, the Sixth Circuit held that "administrative agencies may [not] look the other way when it comes to as-applied constitutional challenges and constitutional-avoidance arguments." *Id.* at 674. The court found no exception to the general rule that "[a]dministrative exhaustion is thus typically required so long as there is 'the possibility of some relief for the action complained of,' even if it is not the petitioner's preferred remedy." *Id.* at 676.

Moreover, fairness and judicial economy weigh in favor of requiring claimants to raise Appointments Clause challenges at the administrative level. Otherwise, they could use this type of challenge to unfairly obtain a second administrative review of their claim if they don't like the ALJ's decision. "Regularly permitting unsuccessful claimants to raise Appointments Clause challenges for the first time on judicial review, especially when the arguments underlying those challenges were available at the administrative level, would 'encourage the practice of "sandbagging": suggesting or permitting, for strategic reasons, that the [adjudicative entity] pursue a certain course, and later – if the outcome is unfavorable – claiming that the course followed was reversible error.'" *Abbington v. Berryhill*, No. 17-00552, 2018 U.S. Dist. LEXIS 210000, at *7 (S.D. Ala. Dec. 13, 2018) (quoting *Ryder v. United States*, 515 U.S. 177, 182-183, 115 S. Ct. 20131, 132 L.Ed.2d 136 (1995). (quoting *Freytag v. Commissioner of Internal Revenue*, 501 U.S. 868, 895, 111 S. Ct. 2631, 115 L.Ed.2d 764 (1991), (Scalia, J., concurring in part and concurring in the judgment)). Williams should not be permitted to raise an Appointments Clause challenge for the first time on judicial review because she did not assert any objection to the ALJ's authority until after she received an unfavorable decision.

I agree with the *Fortin* court's well-reasoned decision. Even if the ALJ would not have considered the merits of Williams' constitutional challenge to her appointment, Williams was required to raise this issue at the administrative level. I also concur with (and find no need to restate) the analyses set forth in the great number of decisions cited above, ruling that issues – such as Williams' Appointments Clause argument – not raised at the administrative level, are waived and cannot be raised in the first instance in a federal court challenge to the Commissioner's final decision. I recommend that the Court find that Williams waived her challenge to the appointment of the ALJ who considered her claims.

  **C.**  **Reliance on VE's Testimony**

Williams also argues that the VE's testimony conflicted with the *Dictionary of Occupational Titles* and that the ALJ erred in relying on it. Specifically, she argues that the VE listed light exertion level jobs (requiring up to six hours of walking) that a hypothetical person like Williams could perform even though the hypothetical person was limited to only four hours of walking during the work day.

The Commissioner argues that there was no apparent conflict between the VE's testimony and the DOT. She argues that the exertional categories of work include *ranges* of work and that the VE considered a limited range of work that could be performed in the light exertional category. The Commissioner cites the VE's testimony that someone with the limitations in the hypothetical question would only be able to perform 40% of the available light exertional level jobs. (Tr. 58). And, considering this limited range of light work, the VE testified there were still light work jobs the hypothetical person could perform, working as a packager, inspector and garment sorter. (Tr. 58). I concur with the Commissioner's argument. There was no apparent conflict between the VE's testimony and the DOT. The VE stated that a

15

hypothetical person like Williams could still perform about 40% of the light exertional level jobs listed in the DOT – such a person would have been restricted to less than six to eight hours of standing per day but still been able to do many jobs. However, even if there had been a conflict, the ALJ met her burden and properly relied on the VE's testimony.

Social Security Ruling 00-4p, 2000 SSR LEXIS 8, provides that an ALJ must elicit a reasonable explanation from a VE when there is an apparent conflict between the VE's testimony and the DOT:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between the VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearing level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

S.S.R. 00-4p, 2000 SSR LEXIS 8, at *5 (2000). The Sixth Circuit interprets SSR 00-4p to require the ALJ to ask the VE whether there is a conflict between the VE's testimony and the DOT. *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 601 (6th Cir. 2009). Neither VE's testimony nor the DOT's occupational descriptions necessarily trump one another. *Ledford v. Astrue,* 311 F. App'x 746, 757 (6th Cir. 2008); *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (holding that "the ALJ and consulting vocational experts are not bound by the *Dictionary* in making disability determinations because the Social Security regulations do not obligate them to rely on the *Dictionary's* classifications.") However, if there appears to be a conflict with the DOT, the ALJ must obtain a "reasonable explanation" for the apparent conflict. *Id.* The Sixth Circuit has consistently held that [when] a VE asserts that his testimony is not in conflict with the DOT, the ALJ may rely on that testimony and is under no obligation to investigate the accuracy of said testimony. *Id.*; *see also Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 858 (6th

16

Cir. 2010) ("[E]ven if a conflict existed, the ALJ inquired properly if the VE's testimony was consistent with the DOT and was given a response in the affirmative. Therefore, the ALJ met her obligation under SSR 00-4p and there was no error relying on the positions the VE offered."); *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009) (Finding that the ALJ fulfilled his duty under SSR 00-4p, by inquiring into any discrepancies between the VE's testimony and the DOT); *Martin v. Comm'r of Soc. Sec.,* 170 F. App'x 369, 374 (6th Cir. 2006) (Noting that the ALJ need not explain how a conflict was resolved under SSR 00-4p when the conflict was not brought to the ALJ's attention).

This court has frequently upheld ALJ Step Five determinations despite an actual conflict between the RFC and DOT when the ALJ inquired about conflicts, conflicts were not brought to the ALJ's attention, and the VE testified that no conflicts existed. In *Lewis v. Comm'r of Soc. Sec.*, No. 3:12-CV-01720, 2013 U.S. Dist. LEXIS 140712, at *33-34 (N.D. Ohio Sept. 30, 2013), this Court found that although the DOT required higher reasoning levels for the jobs identified by the VE than what was provided for in the RFC, the ALJ satisfied his burden at Step Five because he reasonably relied on the VE's testimony that there was no conflict. Likewise, in *Phillips v. Comm'r of Soc. Sec.,* No. 5:12 CV 2085, 2013 U.S. Dist. LEXIS 69739, at *21-22 (N.D. Ohio May 16, 2013), the Court found that a conflict between frequent reaching and handling in the DOT and occasional reaching in the RFC did not require remand because the VE testified that his answers were consistent with the DOT, the ALJ was not required to inquire further, and claimant's counsel did not bring the discrepancy to the ALJ's attention. The Court also stated that because "the DOT's job classifications are collective descriptions of occupations that can encompass numerous jobs ... Within occupations ... there may be variations among jobs performed for different employers...It is entirely possible that Plaintiff could perform work as a

17

security guard in a position that requires only occasional reaching and handling." *Id.* (internal citations and quotations omitted).

Here, the VE opined that a hypothetical individual with Williams' RFC could perform work as a packager, inspector or garment sorter. (Tr. 58.) The ALJ asked the VE whether his testimony was consistent with the DOT, and the VE affirmed that it was. (Tr. 59). The ALJ then provided an opportunity to cross-examine the VE. (*Id.*) Williams' counsel asked several questions but did not ask any questions about the VE's opined-available jobs requiring walking for more than four hours. (Tr. 60-61) Thus, the ALJ fulfilled her obligation under SSR 00-4P. There was no apparent conflict between the VE's testimony and the DOT. "Nothing in applicable Social Security regulations requires the administrative law judge to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge." *Ledford,* 311 F. App'x at 757, (citing *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 2006 WL 509393, at *5 (6th Cir. 2006). The ALJ reasonably relied on the VE's testimony to satisfy her burden at Step Five. Because Williams has not identified a misapplication of legal standards by the ALJ, I recommend that the Commissioner's final decision be affirmed.

## VI. Recommendations

Williams waived her Appointment Clause challenge and the ALJ's decision should not be remanded for that reason. Because substantial evidence supported the ALJ's decision and because Williams does not identify any incorrect application of legal standards, I recommend that the ALJ's decision be AFFIRMED.

Dated: May 23, 2019

Thomas M. Parker
United States Magistrate Judge

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).